1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

9    HUGO APARICIO,

10         *Petitioner*,                                    3:07-cv-00427-LRH-VPC

11    vs.                                                   FINDINGS OF FACT,
                                                            CONCLUSIONS OF LAW,
12    E.K. MCDANIEL, *et al.*,                              AND ORDER

13         *Respondents*.

14

15         This matter having come on for an evidentiary hearing before the Court on August 11, 2011, on

16    the respondents' motion (#82) to dismiss the petition as untimely, and the Court having received the

17    testimony, evidence and argument presented on the issues raised, does hereby make the following:

18                                      FINDINGS OF FACT

19         1.  Petitioner Hugo Aparicio challenges his Nevada state conviction, pursuant to a guilty plea,

20    of two counts of robbery with the use of a deadly weapon.

21         2.  The judgment of conviction was filed on February 19, 2004, and petitioner pursued a direct

22    appeal through counsel.

23         3.  At the time of petitioner's plea, sentencing, and conviction, he was 17.  His birth date is April

24    22, 1986.[1]

25         4.  Petitioner had lived in Mexico City, Mexico, until he was 14, when he came to the United

26    States.  He had completed at least sixth grade in Mexico, and he was able to read and write in Spanish.

27    Aparicio was placed in the ninth grade in the United States, but he was "kicked out" after only a few

28    _____

[1]#114, August 11, 2011, Hearing Transcript [hereafter "Tr."], at 7 (Aparicio); #71, at Exhs. 12-16.

1    months.  He thereafter worked construction jobs.  At that time, prior to his incarceration, he and those

2    around him spoke predominantly Spanish both within his community and at work.[2]

3           5.  Shortly after his conviction, on or about February 24, 2004, Aparicio was transported to High

4    Desert State Prison ("High Desert").  After initially being held in the "fish tank" pending classification,

5    he was placed in the Youthful Offender Program unit, which included juveniles and some young adults.

6    Youthful offenders were placed together in this unit where, *inter alia*, they could go through schooling.[3]

7           6.  Approximately two months after he arrived at High Desert, on April 22, 2004, Aparicio

8    turned 18.

9           7.  Youthful Offender unit inmates did not interact, and could not interact under the governing

10   rules, with the older adult inmate population.[4]

11          8.  Because older adult inmates could not interact with Youthful Offender inmates, inmates in

12   the unit could not interact, as a general rule, face-to-face with adult inmate law clerks.  Nor could the

13   Youthful Offender unit inmates physically access the prison law library during the relevant time period.

14   Aparicio did have one or two face-to-face meetings with an inmate law clerk in early 2004, at a time

15   when his direct appeal still was pending, but this meeting or meetings represented the exception rather

16   than the rule.  The basic operating rules under which the unit was structured – segregating youthful

17   offenders from older adult inmates – precluded such face-to-face interaction as a general rule.[5]

18          9.  Youthful Offender unit inmates thus, in the main, could access prison legal resources during

19   the relevant time period only through a "paging" system, whereby the inmates would request forms,

20   materials, and/or other assistance through prison request forms or "kites."[6]

21          / / / /

22

23   _____

24   [2]Tr., at 7-11 & 33-34 (Aparicio).  Petitioner did not present Clark County, Nevada school records documenting
     the extent of his schooling, or the reason for being expelled, after stating an intent to present same. #107, at 18.

25   [3]Tr., at 12-13 (Aparicio); *id.*, at 87-89 (Eriberto Leon); *id.*, at 181-82 (Kevin Phillips).

26   [4]E.g., Tr., at 125 (Raymond Phenix).

27   [5]Tr., at 13-19 & 61-62 (Aparicio); *id.*, at 93-97 & 99-103 (Leon); *id.*, at 125-28 (Phenix).

28   [6]Tr., at 13-19 (Aparicio); *id.*, at 93-97 & 99-103 (Leon); *id.*, at 125-28 (Phenix); *id.*, at 188-90 (Phillips).

10.   The evidence presented does not credibly establish that requests for forms and legal materials at High Desert routinely were not honored to an extent that would stand in the way of a timely filing. *Inter alia*, both Aparicio and fellow Youthful Offender inmate Eriberto Leon filed state petitions on forms obtained from the prison law library. As discussed further below, Aparicio in the main testified that his requests for *active legal assistance*, not materials, were not honored at High Desert.[7]

_____

[7]See Tr., at 13-19, 59-60 & 67-68 (Aparicio); *id.*, at 93-97, 99-103, 108-11 (Leon).

The Court notes in this regard that when Aparicio filed a grievance in March 2004 – while his direct appeal still was pending – the response reflected that Aparicio had acknowledged the receipt of some 23 forms and motions. Tr., at 13-14 & 67-68 (Aparicio); Hearing Ex. 51 (last page). The only further grievance by petitioner at High Desert that at least has been preserved from the period when equitable tolling actually would be a concern  – *i.e.*, after the expiration of the *certiorari* period on December 14, 2004, and prior to the mailing of the first state petition on August 4, 2005 -- pertained to the confiscation of a CD player and other property from petitioner's cell. Hearing Exh. 51; Tr., at 58. Federal habeas counsel stated in a preface to a question at the evidentiary hearing that not all of the prison requests and/or grievances submitted by petitioner were included in the institutional file materials presented at the hearing. Tr., at 13. The Court has not located a reference to any specific competent evidence supporting counsel's assertion as to the alleged lack of completeness of petitioner's institutional file, as opposed to law library records.

Witness Raymond Phenix was an inmate law clerk in the High Desert law library at one time or another and testified regarding its practices. However, he in fact was not handling kites during the time period relevant to this case from the December 14, 2004, expiration of the *certiorari* period in Aparicio's case through the mailing of his first state petition on August 4, 2005. Phenix stopped working as a law clerk from approximately June 2004 through February 2008 so that he could work on his own litigation. While he testified that he was in the law library two to three times a week and talked to the personnel there, he nonetheless was not personally engaged in the handling of kites and/or distribution of legal materials during the relevant time period. Tr., at 121-22.

Phenix testified regarding sundry issues that could result in a particular kite on occasion being misdirected or not responded to -- such as misdirected prison mail or the supervisor refusing to again answer a request that had been responded to previously. Phenix, however, did not testify to a systemic across-the-board refusal to respond to all kites. He acknowledged that forms generally were provided in response to kites and that information regarding a key case such as the *Strickland* decision would be provided in response to kites. Tr., at 129-30, 139 & 141-46.

Phenix maintained that Spanish language kites were not responded to, but such kites would not have been directed to him to handle because he did not speak Spanish. Tr., at 128-29 & 138. The Court notes that even if such *arguendo* were the case it appears that Aparicio sent all but one of his kites in English, with translation help from other inmates. E.g., Tr., at 14-15, 38-39 & 45-46. The moving force of Aparicio's concern, again, is the law library's failure to provide him active legal assistance in response to his requests. As discussed *infra*, petitioner at all times has the burden of proving a causal connection between the circumstances relied upon for tolling and his own untimely filing.

The Court finds credible former Correctional Officer Kevin Phillips' testimony that materials were delivered from the prison law library to the Youthful Offender unit. Tr., at 182. The Court does not find Phenix' testimony that legal books never were taken to the unit to be credible. See Tr., at 145-46. The gravamen of Aparicio's testimony in any event, again, was not that he repeatedly requested specific books but could not get them but instead was that he requested active legal assistance but was not provided any. And, here too as well, petitioner must establish a causal

(continued...)

11.  Aparicio was not provided active legal assistance in response to these requests because, as a general matter, inmate law clerks do not prepare petitions for other inmates and do not provide substantial active legal assistance in preparing a petition.[8]

12.  Thus, as a general matter, an inmate – whether an English-speaking inmate or a primarily Spanish-speaking inmate with access to translation assistance – does not act diligently or reasonably in delaying the preparation or filing of a petition solely on the basis that an inmate law clerk has not provided requested active legal assistance in preparing a petition.  Inmate law clerks generally do not provide such active legal assistance to a substantial degree.[9]

---

[7](...continued)
connection between the alleged circumstances, such as alleged non-distribution of books, and the lateness of *his* filing, not alleged deficiencies of the paging system in general.

Witness Eriberto Leon testified that the law library allegedly did not respond to requests for, *inter alia*, forms during a lockdown for approximately six months beginning in July 2004. Tr., at 97-99.  The limitation period *in Aparicio's case* was statutorily tolled for the first five months of this lockdown because Aparicio's direct appeal still was pending.  As discussed, *infra*, the Court finds that petitioner has established a viable basis for equitable tolling for the remaining portion of the lockdown, based on the resulting restriction on petitioner's access to translation assistance.  Any *arguendo* failure to respond to requests for forms – over and above the forms that Aparicio already had signed a receipt for – during the lockdown thus does not materially affect the analysis herein.

On a collateral point raised by petitioner, Leon testified that he failed to appeal the denial of his own state petition because he allegedly did not know about his appeal rights and could not obtain advice from the prison law library in regard to same.  Leon testified, *inter alia*, that his petition was pending during the lockdown, and he could not get advice from the law library at that time, which correlates back to his testimony that communication with the law library was restricted during the lockdown. See Tr., at 112-13.  Strictly in passing, the Court notes that it is the practice of the Eighth Judicial District Court to include a notice with an order denying state post-conviction relief that expressly advises a petitioner of his appeal right.  See #72, Ex. 34 (from Aparicio's case).  Leon could read English.  In all events, the salient points for *the case before the Court* are: (a) that the Court has found herein that Aparicio in any event can establish a potential basis for equitable tolling during the otherwise untolled portion of the lockdown (*i.e.*, after the affirmance of his conviction on direct appeal); and (b) that Aparicio did in fact timely appeal the denial of both of his state post-conviction petitions.  Leon's alleged difficulty in regard to appealing the denial of his state petition at or after the tail end of the lockdown did not prove to be an issue for Aparicio on his own two petitions and thus at best has only a marginal indirect relevance to this case.

[8]E.g., Tr., at 189 (Phillips).

[9]As discussed *infra* in the conclusions, an inmate does not have a constitutional right to such substantial active legal assistance by an inmate law clerk over and above the law library resources available through the paging system.  Much of petitioner's presentation is grounded in a premise that he is entitled to equitable tolling during periods when he has requested active assistance in preparing a petition from the prison law library and no such active assistance was provided in response.  As discussed *infra*, this premise is flawed under the controlling law.  The Constitution does not

(continued...)

13. The High Desert prison law library did not have any Spanish language materials of import available, whether for an inmate physically in the law library or for one instead attempting to access its resources through the paging system.[10]

14. While Aparicio was at High Desert, he did not have sufficient English-language capability to prepare and file a petition without at least some translation assistance. The Court does not find that he lacked any English-language capability whatsoever during this time, and his English-language skills improved over time to one degree or another. But during the relevant time period at High Desert, he did not have sufficient English fluency to prepare a petition without some translation assistance.[11]

15. Aparicio had translation assistance available to him from multiple other bilingual inmates in the Youthful Offender unit, including, but not limited to, Eriberto Leon and members of the Sureño gang with whom Aparicio then was affiliated. He had such assistance substantially available to him to translate legal materials, educational course materials, and books.[12]

16. However, petitioner nonetheless often would spend time playing cards when he had yard time and could interact with other inmates who might provide translation assistance.[13]

17. On or about July 13, 2004, an inmate was killed at High Desert, which led to a lockdown of the institution for approximately six months.[14]

/ / / /

---

[9](...continued)
require that state correctional departments provide inmate populations with a fully staffed complement of writ writers standing in the ready to prepare their petitions for them or to actively advise them in this regard. Given the size of prison populations, such a requirement would impose a not insubstantial undertaking on state correctional departments over and above the core requirement of facilitating access to the courts -- as to both the numbers and the training of the inmate law clerks that then would be required to provide such active legal assistance to an entire state prison population.

[10]E.g., Tr., at 131-32 (Phenix).

[11]Tr., at 10-12, 31, 34, 39-44, 47-50, 54-55 & 66 (Aparicio); *id.*, at 68-82 (Elena Martinez); *id.*, at 90 (Leon).

[12]Tr., at 14-15, 37-39, 41-42, 44-46, 50, 63-64 & 67-68 (Aparicio); *id.*, at 85-86, 89-92, 103 & 106-12 (Leon).

[13]Tr., at 42-43 (Aparicio).

[14]Tr., at 97 & 104 (Leon); *id.*, at 121-24 (Phenix); *id.*, at 182-83 (Phillips). See also Frank Curreri, *Prison Melee Claims the Life of One Inmate*, Las Vegas Review Journal, July 15, 2004, at 1B, 2004 WLNR 847962 (for exact date of the incident).

18. The lockdown necessarily substantially limited the extent to which Aparicio could interact with other inmates in the unit who otherwise might assist him with translation.

19. On direct appeal, the Supreme Court of Nevada affirmed Aparicio's judgment of conviction on September 15, 2004. Petitioner did not file a petition for a writ of *certiorari*. The ninety-day time period for seeking *certiorari* review expired on December 14, 2004.

20. Giving petitioner the benefit of the doubt against the backdrop of the nonspecific testimony presented, the Court finds that the relative restriction on petitioner's access to other inmates who could provide translation assistance to him occasioned by the lockdown extended through January 15, 2005. Thereafter, Aparicio again had access to translation assistance from bilingual inmates in the unit to the same extent as before, *i.e.,* to the same extent as discussed in Finding No. 15.

21. On April 22, 2005, Aparicio turned 19.

22. On August 4, 2005, Aparicio mailed a state post-conviction petition to the state district court clerk for filing. Eriberto Leon had assisted Aparicio at least to an extent.[15]

23. 232 days elapsed between the expiration of the time period for seeking *certiorari* review and the mailing of the first state petition for filing.

24. On November 9, 2005, Aparicio was transferred to Ely State Prison ("Ely").[16]

25. On December 13, 2005, Aparicio sent a kite in Spanish to the Ely prison law library requesting an interpreter to help him with his habeas corpus writ and paperwork in Spanish so that he could study how to prepare a writ.[17]

26. The law library responded that law clerks were not allowed to go to his unit – Unit 6 – and that he could request a guide manual on how to file a petition. It appears to be undisputed that this

---

[15]Tr., at at 89-93, 100 & 114 (Leon).

[16]Hearing Ex. 49, Parole Progress Supplemental reflecting custody history (about 40 pages into the exhibit). The Court trusts that in future counsel will Bates number stamp voluminous hearing exhibits.

[17]Hearing Ex. 35; Tr., at 49-50 (Aparicio). Petitioner already had a timely state petition on file at that time, which, as discussed *infra*, automatically statutorily tolled the running of the federal limitation period. The level of available assistance at one time potentially may reflect that available at another. However, the Court notes, as discussed in more detail in other notes, that the documentary evidence presented by petitioner at the evidentiary hearing in large part pertains to periods of time either: (a) before the federal limitation period even had begun running; (b) while he then already had a tolling proceeding pending in the state courts, or (c) well after he already had filed his federal petition.

1   manual was in English, not Spanish, and further that there were no other Spanish-language legal

2   materials of any substance at the library.  The library did have Spanish-speaking law clerks.[18]

3       27.  Petitioner, who has the burden of proof in this regard, did not present any testimony or other

4   evidence at the federal evidentiary hearing  tending to establish that he was unable to obtain translation

5   assistance *from other inmates,* separate and apart from the prison law library, during the time that he

6   was in Unit 6 at Ely, to the extent that, *arguendo*, such assistance still was necessary for him.[19]

7       28.  During all relevant time periods addressed herein, Aparicio could access prison law library

8   resources from the units that he was in at Ely only through a paging system.  As at High Desert, as a

9   general matter, inmate law clerks at Ely do not prepare petitions for other inmates and do not provide

10  other inmates with substantial active legal assistance in preparing  petitions.  The evidence presented

11  does not credibly establish that requests at Ely for forms and legal materials routinely were not honored

12  to an extent that would stand in the way of a filing.  As with regard to High Desert, Aparicio in the main

13  testified that his requests for *active legal assistance*, not materials, were not honored at Ely.[20]

14

15      [18]Hearing Ex. 35; Tr., at 192-95 (Deborah Lightsey).

16      [19]Aparicio testified regarding alleged efforts to be transferred out of a lockdown unit at Ely so that he could
17  obtain assistance from someone "that could be more knowledgeable in the law, and, at the same time, be bilingual."  Tr.
    at 29.  These alleged efforts concern Aparicio's later placement in the lockdown Unit *4* – not the general population Unit
18  *6* – *after* August 6, 2006, after Aparicio sought to separate from the Sureño gang.  The discussion in the text that follows
    reflects that any such alleged efforts: (a) would be seeking to get out of a unit where Aparicio was obtaining substantial
19  active legal assistance from inmate Alexander Ocasio; (b) thereafter covered a period of time after, with Ocasio's help,
    Aparicio had filed a motion for production of the file on September 16, 2006, and a lengthy second state petition on or
20  about January 23, 2007; and (c) thereafter pertained to a period of time after Aparicio had filed the federal petition on or
    about September 16, 2007.  None of the testimony pertained to the period of time prior to August 6, 2006, when he
21  instead was in *Unit 6*.  As with the discussion in the footnote that follows, *when* something occurred tends to be material
    to the equitable tolling analysis.  Aparicio's alleged efforts from in and after approximately October 2006 through
22  August 2009 to get out of lockdown in Unit 4 are not relevant to any material issue herein.

23      [20]Tr., at 20-21, 22, 25-28 & 51-52 (Aparicio); *id.*, at 161-68 & 170-71 (Ocasio); *id.*, at 192-98 (Lightsey).

24      Ocasio testified regarding, *inter alia*, the specificity required to use the Ely paging system.  However, both his
25  own extensive use of that system to obtain legal research materials for Aparicio, as reflected in the cited testimony, as
    well as Ocasio's preparation of a motion for production, a voluminous second state petition, a voluminous federal
26  petition, and other state and federal petitions for himself and others establishes that such facets of the Ely paging system
    did not stand in the way of and prevent the filing of a meaningful pleading challenging an inmate's conviction.

27

28      With regard to Aparicio's requests for law library assistance, as discussed in the text: (a) petitioner has not

(continued...)

-7-

1       29.  On February 24, 2006, the Supreme Court of Nevada affirmed the denial of Aparicio's first

2  state petition.  The remittitur issued on March 22, 2006.

3       30.  On April 22, 2006, Aparicio turned 20.

4       31.  On August 2, 2006, absent tolling or delayed accrual on any basis other than the pendency

5  of the first state petition, the federal limitation period would expire.  That is, 133 days had elapsed as

6  of this date after the issuance of the remittitur on March 22, 2006.  The Court notes such a putative

7  expiration date merely as a reference point in the chronological sequence at this juncture.

8       32.  Four days after this putative expiration date, on August 6, 2006, Aparicio was placed in Unit

9  4 at Ely, a 23-hour lockdown administrative and/or disciplinary segregation unit.  Aparicio was placed

10  in Unit 4 for protection because he was trying to exit the Sureño gang referenced in Finding No. 15.[21]

11       33.  A very short time thereafter, as reflected by the time line that follows regarding legal relief

12  sought, an inmate in a neighboring cell, Alexander Ocasio, agreed to help Aparicio with his case.[22]

13       34.  Ocasio did not provide Aparicio substantial translation assistance.  Ocasio spoke very little

14  Spanish.  Ocasio testified that he and Aparicio conversed mostly in English.  (Tr., at 150.)

15

16       [20](...continued)

17  demonstrated that he was not able to obtain translation assistance from other inmates while in Unit 6; and (b) petitioner otherwise likely was not going to receive substantial active legal assistance from an inmate law clerk in drafting a petition even if he asked for that daily because it is not the role of inmate law clerks to draft petitions for inmates or

18  provide substantial active legal assistance in drafting a petition.  As discussed previously and in more detail *infra*, the Constitution does not require that the inmate law clerks provide such active assistance, although petitioner premises

19  much of his equitable tolling argument upon such an alleged requirement not being satisfied.

20       Over and above these not insubstantial points, the Court notes that petitioner testified extensively at the federal evidentiary hearing regarding kites and grievances *from time periods having nothing to do with this case*.  After the

21  December 13, 2005, kite discussed in the text, *supra*, the remaining kites requesting assistance (Hearing Exhs. 36 and 38 through 40) are from on and after July 28, **2008**.  Petitioner also presented numerous Ely grievances from January 2006

22  through January 21, 2009.  See Hearing Exhs. 37 & 52 (initially erroneously referred to in the transcript as Exhibit 51); Tr. 20-29.  The first grievance in the exhibit that concerned a request *for law clerk assistance* was March 30, **2008**.

23  When habeas counsel asks Aparicio during the evidentiary hearing about requests for assistance and an Ely response, he directs him to documents from November **2009**.  Tr., at 22-23; Hearing Ex. 52, at Bates-stamp 454.  Aparicio responded

24  "No, I don't" when asked whether he recalled "ever" receiving similar responses.  Tr., at 23.  These 2008 and 2009 dates are after Aparicio already had filed: (a) his motion for production of his file in September **2006**; (b) his second state

25  petition on January 23, **2007**; and (b) his federal petition on September 16, **2007**.  These later requests and grievances,

26  and the responses to them, have nothing to do with any time period relevant to this case.

27       [21]Tr., at 148-49 (Ocasio).

28       [22]Tr., at 148-52 (Ocasio).

1       35.  Ocasio instead provided active legal assistance, the type of assistance that Aparicio had

2   sought from inmate law clerks previously and that Eriberto Leon to a lesser extent had provided when

3   Aparicio filed his first state petition.  Ocasio helped Aparicio identify potential legal issues in his case,

4   researched the issues, recommended action steps, and drafted filings and kites.[23]

5       36.  Aparicio's English skills were continuing to improve.  At Ely, he had taken courses and read

6   books written in English in order to improve his English fluency.[24]  Even if the Court assumes,

7   *arguendo*, that Aparicio still did not have sufficient fluency to prepare a petition in English at the

8   relevant time while at Ely:[25] (a) as discussed above, he has not carried his burden of establishing that

9   he did not have translation assistance available through other inmates while he first was in Unit 6; and

10  (b) any *arguendo* lack of available translation assistance while in Unit 4 became a moot point as a

11  possible causal factor standing in the way of the filing of a petition because Ocasio was actively

12  assisting him in preparing a petition and other filings in English.

13      37.  Ocasio knew about the one-year federal and state limitation periods at the relevant time, but

14  he made a strategic decision to recommend that Aparicio file a second state petition to exhaust claims.[26]

15      38.  On September 19, 2006, Aparicio filed a motion in the state district court for production

16  of his legal file prepared by Ocasio.  Aparicio testified that he had wanted the file while at High Desert

17  back in 2004 and 2005.  However, he took no action to obtain the file prior to the 2006 motion.[27]

18      39.  Only 20 days later, on October 9, 2006, the state district court granted relief and ordered

19  the public defender to file an itemized certificate of mailing to Aparicio.  The court thereafter actively

20  monitored the file to insure compliance, and on or about October 30, 2006, the file was forwarded to

21  Aparicio.  (#71, Ex. 2, at 008-009; #72, Exhs. 38-39; Tr., at 155.)

22

23  [23]Tr., at 151-60 & 161-66 (Ocasio).  Ocasio described himself at one point as "a little jailhouse lawyer."  *Id.*, at
    151.

24  [24]E.g., Tr., at 39-41, 50 & 66-67.

25  [25]Cf. Tr., at 166 (Ocasio).

26  [26]Tr., at 160-61 & 171-78 (Ocasio); see also No. 3:06-cv-369-ECR-VPC, *Ocasio v. McDaniel*, #1-1, at 1A-1B

27  (expressly acknowledging the federal time limit in a July 2, 2006, filing, prior to the time that Ocasio met Aparicio).

28  [27]#72, Ex. 37; Tr., at 35-36 (Aparicio).  But cf. *id.*, at 31-32 & 34.  Tr. at 152-53 (Ocasio).

40.  On January 23, 2007, Aparicio mailed a second state post-conviction petition to the state district court clerk for filing.  The second state petition was approximately 80 pages long and presented five grounds.  The petition was prepared by Ocasio.[28]

41.  The State promptly opposed the second petition as, *inter alia*, untimely in a motion to dismiss filed only two weeks later on February 6, 2007.[29]

42.  Aparicio thereafter presented, with Ocasio's assistance, requests in state court on and after March 13, 2007, seeking additional legal file materials that he maintained had not been produced by the public defender, which requests were addressed promptly by the state district court.[30]

43.  The state district court dismissed the second petition as, *inter alia*, untimely.  Aparicio, with Ocasio's assistance, filed multiple papers in the state district court actively seeking to preclude or overcome a dismissal of the petition.  He also filed multiple papers in the state supreme court – over and above the notice of appeal and including an original writ petition – actively seeking to challenge the action of the state district court on the petition.[31]

44.  Meanwhile, on April 22, 2007, Aparicio turned 21.

45.  Petitioner has presented testimony that he and Ocasio communicated by speaking, at least on occasion, through an electrical outlet between cells and that they would pass documents back and forth through a "Cadillac" system, whereby papers are passed from cell to cell via a string in the lockdown unit.[32]  Be that as it perhaps may be, Aparicio was able to vigorously pursue relief in the state courts with Ocasio's help notwithstanding their allegedly communicating in this manner.  It does not appear from the record of the state court proceedings for this period that any such alleged modes of communication in the lockdown unit – as striking as such testimony perhaps may be at first glance – materially impaired Aparicio's ability to seek judicial relief.

---

[28] #73, Ex. 40, at electronic docketing page 81; Tr., at 157-58 (Ocasio).

[29] #74, Ex. 42.

[30] #74, Exhs. 44, 46 & 60; Tr., at 158-60 (Ocasio).

[31] #74, Exhs. 44, 46, 47, 49, 50, 51, 54, 55, 57, 58, 59 & 62.

[32] Tr., at 21-22 (Aparicio); *id.*, at 148-52 (Ocasio).

1    46.  On September 6, 2007, the Supreme Court of Nevada affirmed the denial of the second

2    petition as untimely.

3    47.  Petitioner mailed the 87-page long federal petition, which had been prepared by Ocasio, to

4    the Clerk for filing 10 days later, on September 16, 2007.[33]

5                                   CONCLUSIONS OF LAW

6    1.  The Court has jurisdiction over the subject matter under 28 U.S.C. § 2254(a).

7    2.  Under 28 U.S.C. § 2244(d)(1)(A), absent further tolling or delayed accrual as discussed *infra*,

8    the one-year time period for filing a federal habeas petition would have expired in this matter on August

9    2, 2006.

10    On direct appeal, the Supreme Court of Nevada affirmed the judgment of conviction on

11    September 15, 2004.  Under 28 U.S.C. § 2244(d)(1)(A), the one-year limitation period would begin

12    running after the time expired for seeking *certiorari* in the United States Supreme Court, *i.e.,* on

13    December 14, 2004.  *See, e.g., Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007).  Absent further

14    tolling or delayed accrual, 232 days elapsed before the mailing of the timely first state post-conviction

15    petition on or about August 4, 2005.  Under 28 U.S.C. § 2244(d)(2), the timely state post-conviction

16    petition tolled the limitation period from the mailing of the state petition for filing on or about August

17    4, 2005, through the issuance of the remittitur on March 22, 2006.  Absent further tolling or delayed

18    accrual, the federal limitation period therefore would have expired after the remaining 133 days in the

19    limitation expired, on August 2, 2006.

20    3.  Accordingly, absent further tolling or delayed accrual, the federal petition in this matter was

21    untimely.  The federal petition was not mailed for filing until on or about September 16, 2007, over a

22    full year after the expiration of the federal one-year limitation period, absent further tolling or delayed

23    accrual.[34]

24    _____

25    [33]#8, at 1; Tr., at 160 (Ocasio).

26    [34]The parties' calculation of the running of the federal limitation period – absent further tolling or delayed

27    accrual – accords with the Court's calculation.  That calculation has proceeded on the legal premise that the mailing date
of the first state petition is controlling for purposes of calculating statutory tolling of the federal limitation period under

28                                                                                                     (continued...)

-11-

4.  The second state post-conviction petition did not statutorily toll the federal limitation period under 28 U.S.C. § 2244(d)(2) because the petition was dismissed as untimely under state law.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14, 125 S.Ct. 1807, 1812, 161 L.Ed.2d 669 (2005).  The second state petition further was filed after the expiration of the federal limitation period, absent further tolling or delayed accrual.

5.  With regard to other tolling or delayed accrual issues, the correct order of analysis is for the Court is to address any equitable tolling issues prior to addressing any statutory tolling, or in truth delayed accrual, issues under 28 U.S.C. § 2244(d)(1)(B).  This section provides that "[t]he limitation period shall run from . . . the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action."

Petitioner acknowledges the *Lott* decision cited below but nonetheless argues the case on the basis that the Court must address statutory tolling or delayed accrual issues under § 2244(d)(1)(B) before it addresses equitable tolling.  However, Ninth Circuit law distinguishes between statutory tolling under § 2244(d)(2) and statutory tolling or delayed accrual under § 2244(d)(1)(B) in this regard.  In a case involving possible statutory tolling under § 2244(d)(2) – based upon the pendency of state post-conviction proceedings -- the district court first must determine whether statutory tolling under § 2244(d)(2) applies before considering equitable tolling.  *See, e.g., Jorss v. Gomez*, 311 F.3d 1189, 1192-93 (9th Cir. 2002).  In contrast, in a case where delayed accrual is sought under § 2244(d)(1)(B) – based upon an alleged State-created impediment in violation of the Constitution -- the Ninth Circuit requires

---

[34](...continued)

28 U.S.C. § 2244(d)(2).  Ninth Circuit authority supports the view that the mailing date of the state petition controls for calculating the running of the federal limitation period.  *See Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001); *Saffold v. Newland*, 250 F.3d 1262, 1268-69 (9th Cir. 2000), *vacated on other grounds sub nom*, *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000); *accord Rankin v. Palmer*, 2011 WL 6780878, No. 3:09-cv-00145-LRH-VPC, slip op., at *2 (D.Nev., Dec. 27, 2011).  The Supreme Court of Nevada does not follow the prison mailbox rule to calculate the running of the *state* limitation period, but the issue here is calculation of the *federal* limitation period.  *Cf. Koerner v. Grigas*, 328 F.3d 1039, 1043 n.1 (9th Cir. 2003)(in a context where the federal one-year limitation period was not at issue, the panel noted that Nevada does not recognize the prison mailbox rule for state post-conviction petitions, such that the petition is not filed under Nevada state law until actually received by the state court clerk).  The outcome of the timeliness issue in this case in any event does not turn upon this distinction, which also is not contested herein.

-12-

that the court decide equitable tolling *before* the § 2244(d)(1)(B) issue. *See,e.g., Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Because § 2244(d)(1)(B) necessarily involves a constitutional decision, *Lott* requires that the court must resolve any parallel equitable tolling issues first, so as to avoid, if possible, a potentially unnecessary decision on a constitutional issue. The Court accordingly will address equitable tolling prior to any consideration of delayed accrual under § 2244(d)(1)(B), although in this particular case the equitable tolling discussion also touches on constitutional issues.

6. Given the foregoing Findings of Fact and Conclusions Nos. 7 through 13, *infra*, petitioner has not established a basis for equitable tolling sufficient to render his otherwise untimely federal petition timely.

Equitable tolling is appropriate only if the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, ___ U.S.___, ___, 130 S.Ct. 2549, 1085, 177 L.Ed.2d 130 (2009)(*quoting Pace,* 544 U.S. at 418, 125 S.Ct. at 1814). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007). Determining whether equitable tolling is warranted is a fact-specific inquiry, and, as a discretionary doctrine that turns on the facts and circumstances of each particular case, equitable tolling does not lend itself to bright-line rules. *Spitsyn*, 345 F.3d at 799 & 801; *Whalem/Hunt v. Early*, 233 F.3d 1146, 2248 (9th Cir. 2000)(*en banc*).[35]

---

[35]The Court has proceeded on the assumption that the statement of the standard in the text is substantially equivalent to jurisprudential statements instead framing the standard as one of whether the extraordinary circumstance "made it impossible" to meet the federal filing deadline. Many Ninth Circuit – but not Supreme Court – formulations of the equitable tolling standard refer to the extraordinary circumstance making it "impossible" to meet the filing deadline. The Ninth Circuit has clarified, however, that "[d]espite the unequivocal "impossibility" language in our standard, we

(continued...)

-13-

1    The Court discusses the multiple factors relied upon by petitioner separately below in the course

2    of assessing their relative potential significance as a basis for tolling.  However, the Court has looked

3    to all factors in the case together in determining whether, in the final analysis, petitioner has established

4    a basis for equitable tolling sufficient to render his otherwise untimely petition timely.  After discussing

5    the factors separately, the Court will discuss their application to the otherwise untolled periods.

6    7.    The first factor relied upon by petitioner, his *pro se* status, does not constitute an

7    extraordinary circumstance in and of itself providing a basis for equitable tolling under controlling

8    Ninth Circuit law.  *See,e.g., Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006)(a *pro se*

9    petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting

10   equitable tolling).  The *pro se* status of a habeas petitioner instead is an ordinary circumstance.  There

11   is no independent freestanding right to active legal assistance by counsel or, as discussed further *infra*,

12   inmate law clerks in pursuing federal habeas relief.  Inmates must timely and diligently seek federal

13   habeas relief while proceeding *pro se*; and if they fail to do so, the fact that they were proceeding

14   without counsel or other active legal assistance does not establish a viable basis for equitable tolling.

15   8.  In connection with Findings Nos. 3 through 6, 21, 30 and 44, petitioner's relative youth and

16   limited education do not establish a basis for equitable tolling, in and of themselves.

17   Petitioner points to the fact that he was 17 when he was convicted and thereafter placed in the

18   Youthful Offender unit at High Desert.  However, while the Court has taken petitioner's relatively

19   young age into consideration while weighing the other factors presented, petitioner of course did not

20   remain 17 thereafter during the times relevant to the equitable tolling analysis.  During the otherwise

21

22

────────────────────

23   [35](...continued)
     have not insisted that it be literally impossible for a petitioner to file a federal habeas petition on time as a condition of

24   granting equitable tolling."  *Harris v. Carter*, 515 F.3d 1051, 1054 n.5 (9th Cir. 2008).  Rather, the court of appeals has
     "granted equitable tolling in circumstances where it would have technically been possible for a prisoner to file a petition,

25   but a prisoner would have likely been unable to do so."  *Id.  See also Bills v. Clark*, 628 F.3d 1092, 1100 n.3 (9th Cir.
     2010)(contrasting language); *Roberts v. Marshall*, 627 F.3d 768, 771 n.5 (9th Cir. 2010), *cert. denied*, ___ U.S. ___, 132

26   S.Ct. 286, 181 L.Ed.2d 171 (2011)(also suggesting that there may be no substantive difference in the different language
     used).  There may well be nothing more than semantics distinguishing "standing in the way of and preventing a timely

27   filing" from "making it impossible to file timely."  In any event, the Court has not required petitioner to show herein that
     an extraordinary circumstance literally made it impossible for him to file a timely petition, as opposed to instead being a

28   substantial impediment standing in the way of and preventing a timely filing.

untolled period between December 14, 2004, and August 4, 2005, petitioner was 18 to 19 years old. During the later otherwise untolled period between March 22, 2006, and the putative expiration of the federal limitation period on August 2, 2006, petitioner was 19 to 20 years old.  Thereafter, during the prosecution of the second state petition, Aparicio was 20 to 21 years old.  The Court perhaps would have been presented with a different issue if petitioner had been only 17 or under instead during a substantial period of time when the federal limitation period actually was running.  In all events, however, the Court has taken into consideration that the petitioner was a very young adult, who initially was segregated by prison authorities from the main adult prison population on that very basis, during the relevant time.  His, relative, youth nonetheless does not constitute – in and of itself – an extraordinary circumstance for purposes of equitable tolling.

Nor does limited education – with the Ninth Circuit case law specifically regarding English language capability discussed *infra* – in and of itself constitute an extraordinary circumstance for purposes of equitable tolling.  Under the authorities cited above, equitable tolling is "unavailable in most cases," and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *E.g., Miles, supra; Miranda, supra.*  Unfortunately, there tends to be what is a well-recognized high correlation between limited education and prison incarceration.[36]  If the limitation period ran only against those with a truly functionally equivalent high school level education, much less a college education, due to equitable tolling, the Court is not sanguine that the limitation period would run in more than an isolated few cases.  See also n. 37, *infra.*  A limited education level, standing alone, is not an extraordinary circumstance that stands in the way of and prevents a timely filing.

9.  In connection with Findings Nos. 4, 13 through 18, 20, 25 through 27, and 32 through 43, petitioner has not demonstrated that his limited English language capability, which improved over the relevant period, constituted an extraordinary circumstance that stood in the way of and prevented a timely filing for a sufficient period of time to render his otherwise untimely petition timely.

To establish a basis for equitable tolling on this basis under controlling Ninth Circuit law, "a non-English-speaking petitioner seeking equitable tolling must, *at a minimum*, demonstrate that during

---

[36]*E.g., Lewis v. Casey*, 518 U.S. 343, 354, 116 S.Ct. 2174, 2181, 135 L.Ed.2d 606 (1996).

the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language *or translation assistance* from *an inmate*, library personnel, *or other source*." *Mendoza v. Carey*, 449 F.3d 1065, 1170 (9th Cir. 2006)(emphasis added).

Here, petitioner has established that his English skills were limited to an extent (albeit improving), that there were no Spanish language legal materials of substance available through either prison law library, and that he perhaps could not obtain regular translation assistance on a reliable basis *through the prison law libraries.*

The record establishes, however, that petitioner had ample translation assistance available to him through other inmates in the Youthful Offender program at High Desert except during the approximately six month period of time when the prison was locked down, from July 13, 2004, through January 15, 2005.  He otherwise had available translation assistance while at High Desert for a wide variety of purposes, including for legal matters as well as for educational and recreational purposes.

Further, petitioner, who has the burden of proof on this issue, presented no evidence tending to establish that he was unable to obtain similar translation assistance from other inmates while in the general population Unit 6 at Ely, when the limitation period was running after March 22, 2006.

Under *Mendoza*, this showing – as to the time at High Desert and in general population in Unit 6 at Ely – is insufficient to establish a potential basis for equitable tolling for any period of time except for the approximately one-month period where the High Desert lockdown overlapped the running of the federal limitation period after the *certiorari* period expired on December 14, 2004.  Otherwise, petitioner's showing at the evidentiary hearing proceeds on the apparent assumption that if he demonstrates that he could not obtain either Spanish language legal materials or translation assistance from the prison law libraries he has met his burden of proof.  He has not.  He instead must show "at a minimum" that he also "was unable, despite diligent efforts, to procure . . . translation assistance from an inmate . . . or other source." *Mendoza, supra*.  He has not demonstrated so here.  In fact, the evidence clearly preponderates to the contrary for a substantial period of time in this regard.

Further, even if the Court assumes, *arguendo*, that petitioner had no reliable access specifically to other translation assistance while in the lockdown Unit 4 at Ely, he had active legal assistance from Alexander Ocasio during this period of time.  Accordingly, any continuing English-language limitation

-16-

was not causally related to the non-filing of a federal petition for this period.  The petitioner must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn, supra*.  Petitioner clearly was not prevented from litigating – and litigating vigorously – during this particular time period by any *arguendo* continuing English-language limitations and/or lack of Spanish-language legal resources.

Petitioner's limited English language skills therefore did not provide a potential basis for equitable tolling other than for the period from December 15, 2004, through January 15, 2005.[37]

10.  The combination of petitioner's age, limited education, and limited English fluency did not constitute the functional equivalent of a cognitive or mental health impairment that provides a basis for equitable tolling.

Petitioner urges that "[a]lthough [he] does not allege mental health or other cognitive impairments as an equitable tolling factor, his age, his lack of formal education, and lack of English-language skills may be analogized to the type of mental impairments warranting tolling relief" in prior cases.  He cites cases where the Court has found that particular petitioners could not effectively use the paging system without active legal assistance due to mental impairments.  (#85, at 21 n.6.)

---

[37]Petitioner relies in a supplemental filing (#116) upon the Third Circuit's decision in *Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011).  This reliance is misplaced.  In *Pabon*, the federal district dismissed the petition as untimely without an evidentiary hearing despite the petitioner's presentation of materials maintaining that he had no translation assistance available to him.  The Third Circuit remanded *for an evidentiary hearing*.  654 F.3d at 399-404.  In the present case, in contrast, this Court has held an evidentiary hearing and petitioner has failed to carry his burden of proof at that hearing as to the entirety of the otherwise untolled period of time.  A habeas petitioner still must carry his burden of proof with sufficient pertinent evidence once he is granted an evidentiary hearing.  Petitioner has not done so here.

Petitioner further relies upon language in *Pabon* to the effect that the proper inquiry is not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners but instead is on how severe an obstacle is for the prisoner seeking to file a timely petition.  *See* 654 F.3d at 400-01.  With due respect to the decision of the Third Circuit, which of course is not controlling in the Ninth Circuit, the Court would note that, under Ninth Circuit law, equitable tolling is "unavailable in most cases," and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  *Miles, supra; Miranda, supra*.  It thus is not at all immaterial to recognize that a purported "extraordinary circumstance" upon which a petitioner relies to establish equitable tolling not only is a quite ordinary circumstance but further is one that would render the Congressionally-established limitation period in large part dead letter if held to establish a viable basis for equitable tolling.

In all events, such generalities aside, the Ninth Circuit case law in *Mendoza* clearly establishes what a petitioner specifically must show to establish a viable basis for equitable tolling based upon limited English language ability.  In this case, after an evidentiary hearing, petitioner simply has failed to carry his burden of proof under *Mendoza* as to any relevant period other than that identified in the text.

-17-

1    As with limited English language proficiency, the Ninth Circuit has established clear and

2  definitive criteria for determining when a mental impairment provides a viable basis for equitable

3  tolling.  The Ninth Circuit's decision in *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), states the

4  governing standard vis-à-vis a mental impairment:

5        . . . [W]e conclude that eligibility for equitable tolling due to
mental impairment requires the petitioner to meet a two-part test:

6

7        (1)    *First*, a petitioner must show his mental impairment was
an "extraordinary circumstance" beyond his control . . .
by demonstrating the impairment was so severe that

8               either

9                    (a) petitioner was unable rationally or factually
personally understand the need to timely file, or

10

11                    (b) petitioner's mental state rendered him unable
personally to prepare a habeas petition and
effectuate its filing.

12

13        (2)    *Second*, the petitioner must show diligence in pursuing
the claims to the extent he could understand them, but
that the mental impairment made it impossible to meet

14               the filing deadline under the totality of the circumstances,
including reasonably available access to assistance. . . .

15

16  628 F.3d at 1099-1100 (emphasis in original)(footnotes omitted); *see also id.*, at 1100-01.

17    Petitioner has presented no competent evidence, such as psychological expert testimony,

18  establishing that he was unable rationally or factually to personally understand the need to timely file

19  papers seeking to overturn his conviction.  Petitioner has presented no competent evidence tending to

20  establish that he could not maintain the concentration, persistence, and pace necessary to prepare a

21  petition.  He has presented no evidence upon which one could conclude that his situation was analogous

22  to the serious mental health condition required to establish a viable basis for equitable tolling under

23  controlling Ninth Circuit law.

24    In short, being a young adult primarily Spanish speaker with limited education does not provide

25  a basis for equitable tolling without the petitioner satisfying the specific standards established by Ninth

26  Circuit case law for evaluating whether a lack of English language proficiency and/or mental health

27  impairment provides a viable basis for equitable tolling.  Being such an inmate as described above

28  hardly is an extraordinary circumstance in a prison in the United States.  Again, equitable tolling is

1   unavailable in most cases, and the threshold necessary to trigger equitable tolling is very high, lest the

2   exceptions swallow the rule.[38]  Even further to the point, being a Spanish-speaking young adult inmate

3   with limited education is hardly analogous to being an inmate who cannot even rationally understand,

4   in any language, the need to timely file a petition and/or who cannot maintain the concentration,

5   persistence, and pace necessary to prepare a petition due to a serious mental health condition.

6       11.  In connection with Findings Nos. 8 through 12, 25 through 26, and 28,  petitioner has not

7   demonstrated a viable basis for equitable tolling based on alleged limited access to prison legal

8   resources.

9       Petitioner proceeds on the premise that he is entitled to equitable tolling during any period when

10  he could access prison legal resources only through a paging system rather than by being able to

11  physically go to the law library and/or when he requested but did not receive active legal assistance

12  from an inmate law clerk in preparing a petition.  That is not the law.

13      First, use of any paging system of any description whatsoever, in and of itself, does not

14  categorically violate the Constitution and/or provide a basis for equitable tolling.

15      In *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court,

16  throughout the majority opinion, emphasized that States can discharge their underlying constitutional

17  obligation of facilitating inmate access to the courts through a wide variety of alternative means.  The

18  Court sharply criticized federal court micro-management of prison operations in regard to dictating the

19  specific manner of providing legal resources.  *See* 518 U.S. at 349-63, 116 S.Ct. at 2179-86.  In

20  reversing the lower court decisions, the Supreme Court extensively limited the potential reach of its

21  prior decision in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).  The Court

22  expressly declared that "we now disclaim" the broader statements made in *Bounds*, and it rejected a

23  dissenting view of that case that "rests upon the expansive understanding of *Bounds* that we have

24  repudiated."  *See,e.g., Lewis v. Casey*, 518 U.S. at 350-55 & n.4, 116 S.Ct. at 2179-82.

25      Significantly, with particular regard to a prison paging system, the minority in *Lewis v. Casey*

26  expressly conceded, in arguing for a remand rather than reversal of the district court's extensive

27

28      [38]See also note 37, *supra*.

-19-

injunction order, that "it is unlikely that a proper application of *Turner* [*v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)], would have justified its decision to order the State to grant lockdown prisoners physical access to the stacks, given the significance of the State's safety interest in maintaining the lockdown system and the existence of an alternative, an improved paging system, acceptable to the respondents." 518 U.S. at 398, 116 S.Ct. at 2203 (Souter, J., concurring in part, dissenting in part, and concurring in the judgment)(referring to the habeas petitioners by their role as respondents on *certiorari* review).   Given the overall tenor of the majority opinion in *Lewis v. Casey* and the above express concession by the minority justices, the mere fact that a prison uses a paging system clearly does not provide a petitioner with a lay down hand as to either unconstitutionality or equitable tolling.

Second, in this same vein, there similarly is no freestanding right to active legal assistance, by inmate law clerks or otherwise.   In *Lewis v. Casey*, the Supreme Court clearly stated that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." 518 U.S. at 351, 116 S.Ct. at 2180.   The Court expressly disavowed its prior statements in *Bounds* suggesting that the States must enable inmates "*to litigate effectively* once in court." 518 U.S. at 354, 116 S.Ct. at 2181 (emphasis in original).   The Court stated that "to demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires." *Id.*

What the Constitution does require is that prisons provide access to the *courts* through adequate law libraries *or* adequate legal assistance.   *E.g., Lewis v. Casey*, 518 U.S. at 346, 116 S.Ct. at 2177. Indeed, States arguably can honor their obligation to facilitate inmates' right of access to the courts through a wide variety of means, including potentially by providing forms with instructions in lieu of an extensively-stocked law library.   *See* 518 U.S. at 351-54, 360-361& n.7, 116 S.Ct. at 2180-81, 2184-85 & n.7.

Thus, merely showing that an inmate does not have direct access to or assistance from an inmate law clerk does not establish either unconstitutionality of the prison legal resource system or a basis for equitable tolling.   Accordingly, in *Mendoza, supra*, the Ninth Circuit did not hold that a non-English-speaking inmate is entitled to equitable tolling if he does not have direct access to the *active legal assistance* of a law clerk.   Rather, the Ninth Circuit instead held that a non-English-speaking inmate

-20-

1   is entitled to equitable tolling if he cannot secure *translation* assistance, whether through an inmate law

2   clerk, another inmate, or otherwise.[39]   A non-English speaking inmate with translation assistance has

3   no more right to active legal assistance from an inmate law clerk than does an English-speaking inmate.

4   Neither has a right to such active legal assistance.   Neither has justification under tolling principles to

5   delay seeking post-conviction relief on the basis that he has requested active legal assistance from an

6   inmate law clerk but none has been provided.

7           Petitioner urges that the following passage from *Lewis v. Casey* leads to the contrary conclusion:

9               Petitioners [*i.e.,* the State] contend that "any lack of access
        experienced by these two inmates is not attributable to unconstitutional
        State policies," because ADOC "has met its constitutional obligations."

10      . . . . The claim appears to be that all inmates, including the illiterate and
        non-English speaking, have a right to nothing more than "physical access

11      to excellent libraries, *plus* help from legal assistants and law clerks."
        . . . . This misreads *Bounds*, which as we have said guarantees no

12      particular methodology but rather the conferral of a capability — the
        capability of bringing contemplated challenges to sentences or conditions

13      of confinement before the courts.   When any inmate, even an illiterate or
        non-English-speaking inmate, shows that an actionable claim of this

14      nature which he desired to bring has been lost or rejected, or that the
        presentation of such a claim is currently being prevented, because this

15      capability of filing suit has not been provided, he demonstrates that the
        State has failed to furnish "*adequate* law libraries or *adequate* assistance

16      from persons trained in the law," *Bounds*, 430 U.S., at 828, 97 S.Ct., at
        1498 (emphasis added).   Of course, we leave it to prison officials to

17      determine how best to ensure that inmates with language problems have
        a reasonably adequate opportunity to file nonfrivolous legal claims

18      challenging their convictions or conditions of confinement.   But it is that
        capability, rather than the capability of turning pages in a law library,

19      that is the touchstone.

20   518 U.S. at 356-57, 116 S.Ct. at 2182 (emphasis as in original)

21           Petitioner suggests that the last sentence of this passage signifies that a State must not merely

22   provide non-English-speaking inmates "the capability of turning pages in a law library" but instead must

23   provide such inmates with active legal assistance by an inmate law clerk.   Of course, no issue regarding

24   specific resources in this regard was presented in *Lewis v. Casey* because there in truth were no actual

25   non-English-speaking plaintiffs in that case.   *See* 518 U.S. at 358-59, 116 S.Ct. at 2183-84.   The Court

27       [39]As discussed, *supra*, in Conclusion No. 9, in this case, Aparicio has not demonstrated that he was unable to
     obtain such translation assistance during the relevant times other than during a one-month period while he was at High
     Desert, while the prison was in lockdown.

in fact *reversed* the systemwide remedy dictated by the federal district court with regard to illiterate inmates as being over-expansive. *Id.* The passage otherwise reaffirms the Supreme Court's core conclusion that the federal courts must "leave it to prison officials to determine how best to ensure that inmates with language problems have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions." The key distinction between an English-speaking and non-English-speaking inmate in this regard of course is their relative capability to read and write in English. Under *Mendoza*, if the non-English-speaking inmate does not demonstrate that he could not obtain translation assistance from the "from *an inmate*, library personnel, *or other source*," he does not establish a viable basis for equitable tolling. 449 F.3d at 1170 (emphasis added). Nothing in *Lewis v. Casey*, including in the passage quoted above, requires that a State provide a non-English-speaking inmate who factually has translation assistance with active legal assistance.

Petitioner otherwise relies upon *Bounds*, a 1971 summary affirmance by the Supreme Court, and a law review article. Petitioner maintains that the State of Nevada seeks "to justify an almost complete abrogation of <u>Bounds</u>" by restricting his direct physical access to inmate law clerks and the prison law library.[40] However, in truth, it was the United States Supreme Court, not the State of Nevada, that in substantial measure effectively abrogated much of *Bounds* and expressly repudiated the reading of *Bounds* that petitioner pursues here. Given a choice between the watershed decision in *Lewis v. Casey* clearly proclaiming that inmates do not have "an abstract, freestanding right to a law library or legal assistance," 518 U.S. at 351, 116 S.Ct. at 2180, and argument drawn from a *Bounds* decision that the Court both criticized and limited, this Court follows *Lewis v. Casey*. That choice is even easier with regard to an inference from a summary affirmance 25 years before, or a law review article.

In the present case, Aparicio, who has the burden of proof, has failed to demonstrate that he did not have translation assistance for the majority of the relevant time period. He is not entitled to equitable tolling based upon the fact that an inmate law clerk would not prepare a petition for him and/or the fact that he could access prison legal resources only through a paging system. In this regard, the Court has not found credible testimony that the High Desert and Ely prison law libraries regularly

---

[40]#111, at 5.

-22-

1   would not respond to any requests whatsoever for forms and other particular legal materials.  In all

2   events, the core of petitioner's complaint with regard to the paging system is not that he himself

3   repeatedly sought specified materials from the law libraries, during the relevant time period, and could

4   not obtain any of them.  Rather, the gravamen of his complaint regarding prison legal resources is that

5   he repeatedly requested *active legal assistance from inmate law clerks* and that he received no help in

6   response to *these* requests.  As discussed herein, however, there simply was no requirement, under the

7   Constitution, for the inmate law clerks to provide active legal assistance in response to such requests.

8   Petitioner thus could not merely sit by after such requests were not honored and delay seeking post-

9   conviction relief while he waited for someone to draft a petition for him.  A petitioner's *pro se* lay

10  status, again, is not a basis for equitable tolling under established law.  *E.g., Raspberry, supra.*[41]

11          12.  In connection with Findings Nos. 38 through 42, petitioner has not demonstrated a viable

12  basis for equitable tolling on the basis that he did not obtain his legal file until on or about October 30,

13  2006.

14  _____

15          [41]Petitioner additionally relies on the prior decisions in this Court in *Koerschner v. Warden*, 508 F.Supp.2d 849
     (D. Nev. 2007), and *Moxley v. Neven*, No. 2:07-cv-01123-RLH-GWF, #25 (D. Nev., Sept. 30, 2008), as establishing

16  that the paging system was constitutionally inadequate.  As the Court discussed in greater depth in its prior decision in
     *Felix*, neither *Koerschner* nor *Moxley* establish that all paging systems in place at all times in all Nevada state prisons

17  are constitutionally inadequate.  In both cases, the Court was making discretionary appointments of federal habeas
     counsel under 18 U.S.C. § 3006A, not making a definitive constitutional holding.  *Koerschner* further concerned the
     paging system in place in July 2007 at Lovelock Correctional Center, an institution at which Aparicio was not held at

18  any time period relevant to this case.  *Moxley*, in contrast, did discuss the system in place at Ely as of approximately July

19  2008.  However, significantly, then-Chief Judge Hunt noted in *Moxley* that: (a) the paging system then practiced at Ely
     included several improvements over features of the Lovelock paging system that had been of concern in *Koerschner*;

20  and (b) that the final institutional procedure for the Ely paging system still was undergoing review and thus then was a
     work in progress.  He accordingly reserved judgment as to the constitutional adequacy of either the system then in place

21  or the system to be later finally adopted, appointing federal habeas counsel out of an abundance of caution.  Neither
     *Koerschner* nor *Moxley* thus establishes the unconstitutionality of either one of the paging systems in operation at the

22  times relevant to Aparicio's case.  Nor does either case establish an automatically viable basis for equitable tolling.  *See*
     *Felix v. McDaniel*, 2012 WL 666742, No. 3:09-cv-00483-LRH-WGC, slip op. at *5-*8 (D. Nev., Feb. 29, 2012).

23

24          Indeed, in certain respects, paging systems used in Nevada state prisons have advantages over other means of
     making legal resources available to inmates.  For example, under the paging system, multiple copies of frequently-

25  requested cases are available for distribution to multiple inmates simultaneously.  A case in a bound volume on a shelf in
     a physical law library instead may be viewed by only one inmate at a time, and only when the inmate is in the library.

26  As a result, in past cases, frequently-sought cases on occasion would be removed from the bound volume by inmates,
     although petitioner presented no such testimony in this case.  Under a paging system, in contrast, copies of the same case

27  can be sent to multiple inmates at the same time, without the necessity of them having to come physically to the law
     library during what typically were limited times for physical law library access.  And the case is never rendered

28  unavailable by being pilfered from a bound volume.  *See Felix, supra*, slip op. at *6.

*First*, petitioner did not *request* his legal file until September 2006.  Once he did, the state district court promptly granted his motion and then actively monitored the matter to ensure that the public defender forwarded the file to him promptly.  Petitioner testified that he *wanted* his file as far back as 2004, when he was at High Desert.  He nonetheless did not *request* the file until Alexander Ocasio prepared the motion for him in September 2006.  As discussed in Conclusion No. 11, petitioner had no right to active legal assistance, and he thus could not wait until someone else prepared such a motion for him to seek relief in the state district court.  Petitioner had translation assistance during the majority of the relevant time period back at High Desert, and he was able to file the first state petition while at High Desert.  Nothing stood in the way of him also filing a motion for production of his file if that is what he wanted.  The limitation period under § 2244(d)(1) virtually by definition is a limitation period applicable to predominantly *pro se* lay litigants.  An inmate wishing to challenge his conviction, including a non-English speaking inmate with translation assistance, simply must take the initiative to proceed ahead *pro se* and *request* what he *wants* if he cannot find someone to help him seek judicial relief.  If he does not do so, the limitation period continues to run against him.

*Second*, petitioner could have filed a timely original federal petition and then moved to amend with additional information after obtaining the file.  *See Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1014 (9th Cir. 2009)(the petitioner's lack of access to all of his files did not provide a viable basis for equitable tolling because he could have filed a timely original petition and then sought to amend to allege additional information).  Not having his complete legal file prior to asking for it did not stand in the way of petitioner filing a timely federal petition.

Petitioner further has pointed to follow-on proceedings in the state courts in and after early 2007 where he sought sundry items that had not been included in the materials forwarded to him by the public defender on October 30, 2006.  However, by this point, petitioner had filed not just one, but two, state petitions, including the voluminous second petition that he mailed on January 23, 2007.  The above-cited *Waldron-Ramsey* holding applies with even greater force with regard to these documents and proceedings (even assuming, *arguendo*, that there otherwise still was time left in the limitation period at this late juncture).  Petitioner clearly had demonstrated, by the filing of two state petitions, that not having these materials did not stand in the way of his filing an original petition prior to obtaining them.

-24-

1    13. Considering all of the foregoing factors in combination, petitioner has not demonstrated that

2    extraordinary circumstances stood in his way and prevented the timely filing of a federal petition for

3    a sufficient period of time to render his otherwise untimely federal petition timely.  He has demonstrated

4    a viable potential basis for tolling for a period when the federal limitation period actually was running

5    only through January 15, 2005.

6    Taking into account petitioner's young age then at 18 years old, his limited education, his *pro*

7    *se* status, the limited level of assistance available through the prison law library, his English language

8    capability level at that time, and the limitation on his access to other inmates who would provide

9    translation assistance while High Desert was on lockdown, the Court finds that petitioner has

10   demonstrated a viable basis for equitable tolling after the expiration of the *certiorari* period on

11   December 14, 2004, through the end of the lockdown on or about January 15, 2005.

12   Thereafter, after the institution-wide lockdown was lifted, the circumstances presented from

13   January 16, 2005, through August 3, 2005, in truth were no different from the circumstances presented

14   on August 4, 2005, when Aparicio mailed his first state petition.  After the end of the lockdown,

15   petitioner once again had access to a range of bilingual inmates who could provide translation

16   assistance.  Even taking into account the remaining factors canvassed in the preceding paragraph, no

17   extraordinary circumstance stood in petitioner's way and prevented his mailing the petition that he

18   mailed on August 4, 2005, instead at any time between January 15, 2005, and that date.

19   As noted above, the first petition statutorily tolled the limitation period through March 22, 2006.

20   By the time that the federal limitation period started running again on March 23, 2006, Aparicio

21   was in Unit 6 at Ely.  Petitioner has not carried his burden of proof to establish that he did not have

22   translation assistance available to him while he was in this unit up through August 6, 2006.  During this

23   time period, petitioner turned 20 years old, and his English skills were continuing to improve.  Taking

24   into account all of the factors in combination, petitioner has not established that extraordinary

25   circumstances stood in his way and prevented the timely filing of a federal petition on and after March

26   23, 2006, while he was in Unit 6 at Ely.  The fact that he could not obtain active legal assistance from

27   the law library to prepare a petition while he was in Unit 6 does not establish, singly or in combination

28   with other factors on the showing made, a viable basis for equitable tolling during this period.

1   After Aparicio is transferred to the lockdown Unit 4 on August 6, 2006, he promptly thereafter

2   receives active legal assistance from Alexander Ocasio.  The availability of this active legal assistance

3   thereafter renders any *arguendo* remaining need for and/or lack of availability of translation assistance

4   while in Unit 4 a non-factor in terms of causation.

5   With this active legal assistance, however, petitioner filed a motion for production of the file

6   nearly a year before the later federal petition and then a second state petition nearly a full eight months

7   before the later federal petition.  This filing of the motion for production and then what was a

8   voluminous second state petition clearly demonstrates that Aparicio was capable in the circumstances

9   then presented of filing papers seeking relief in a court.  That is not to say that petitioner was not able

10  to do so previously.  That is to say, however, that there in truth is no room for discussion after the

11  September 19, 2006, motion, even less so after the January 23, 2007 second state petition.[42]

12  Accordingly, looking across the entire potential federal limitation period, petitioner has

13  presented a potentially viable basis for tolling only with respect to the one-month period from December

---

15  [42] While petitioner rhetorically dismisses the first state petition as, *e.g.,* "skeletal," the Court instead concludes
16  that the first state petition sufficiently presented exhausted claims of ineffective assistance of counsel as to the entry of
    his plea for petitioner to be able to present an exhausted federal claim in that regard.  Merely because a lay inmate refers
17  to "uneffective" rather than "ineffective" assistance of counsel does not lead to a conclusion that the petitioner has failed
    to state a federal claim for relief under *Strickland*, particularly considering the factually specific allegations made in the
18  first state petition.  See #71, Ex. 26.

19  Moreover, on direct appeal, petitioner argued that it was a violation of due process and equal protection under
    the Fifth and Fourteenth Amendments as well as cruel and unusual punishment in violation of the Eighth Amendment to
20  sentence him to an eight year rather than a four year aggregate minimum sentence on the basis that he was a teenager.
    #71, Ex. 20, at 10-11.  Petitioner cited to and relied by analogy on *Martinez v. State*, 114 Nev. 735, 961 P.2d 143
21  (1998), which held – in turn citing relevant federal case authority – that relying upon a defendant's nationality in
    sentencing violated his due process rights under the Fourteenth Amendment.  114 Nev. at 737-38, 961 P.2d at 145-46.

23  Controlling law does not establish that *arguendo* not having exhausted claims in and of itself constitutes an
    extraordinary circumstance standing in the way of a timely federal filing.  *See Randle v. Crawford*, 604 F.3d 1047, 1058
24  (9th Cir. 2010).  In this case, however, petitioner in all events could have presented at least one exhausted federal claim
    at any time after the conclusion of his direct appeal.  *Cf. Waldron-Ramsey, supra* (petitioner could file a timely original
25  federal petition and seek leave to amend after obtaining additional file materials).  Supreme Court law, as well as prior
    Ninth Circuit law, indeed authorized the procedure of filing a timely mixed petition with exhausted claims while seeking
26  a stay for the petitioner to seek to exhaust additional claims in the state courts.  *See Rhines v. Weber*, 544 U.S. 269, 125
    S.Ct. 1528, 161 L.Ed.2d 440 (2005).

28  The purported "skeletal" nature of the first state petition thus provided no viable justification for petitioner not
    filing a timely federal petition, at any point in time.

15, 2004, through January 15, 2005. Whether the Court approaches the issue from a counting-the-days viewpoint or instead from a causation viewpoint, establishing a potentially viable basis for tolling only for this one month period at the outset of the limitation period is insufficient to render Aparicio's federal petition timely. From a counting-the-days viewpoint, there simply is too much untolled time -- especially with nearly a year passing after the September 19, 2006, motion and nearly eight months of indisputably untolled time after the January 23, 2007 second state petition -- for approximately 30 days of untolled time to render the petition timely. From a causation viewpoint, an extraordinary circumstance inhibiting filing for a relatively short duration early in the limitation period does not have a determinative causal connection to a failure to timely file a federal petition at the end of the period.[43]

In this regard, any alleged negligence and/or tactical error by Ocasio in steering Aparicio toward the filing of a motion for production of the file and a second state petition prior to instead then filing a federal petition clearly does not provide a basis for equitable tolling. *See,e.g., Lawrence v. Florida*, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007); *Randle v. Crawford,* 604 F.3d 1047, 1058 (9th Cir.2010); *Spitsyn*, 345 F.3d at 800; *Miranda*, 292 F.3d at 1066–68 & n. 4; *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001). It is undisputed that Ocasio was aware of the federal limitation period at the relevant time. It further was established law by that point that an untimely state petition would not statutorily toll the running of the federal limitation period. *Pace, supra*.

At bottom, Aparicio moved forward with his two state petitions, as well as his untimely federal petition, only when someone else provided active legal assistance – notwithstanding his failure to show that he did not have translation assistance during the relevant time periods. While petitioner will argue that this statement demonstrates his entitlement to equitable tolling, it does not. What the above statement instead demonstrates is that petitioner, again at bottom, ultimately relies upon his *pro se* lay status to establish equitable tolling for the vast majority of the untolled time. Under established law, petitioner's *pro se* status does not provide a basis for equitable tolling, and the State was under no constitutional obligation to provide the active legal assistance that he requested over and above the other

---

[43] *See generally Felix v. McDaniel*, 2012 WL 666742, No. 3:09-cv-00483-LRH-WGC, slip op. at *5 & n.13 (D. Nev., Feb. 29, 2012)(comparing counting-the-days and causation approaches and discussing related case authority).

legal resources provided.  Even taking all of the other factors in this case into account, petitioner simply cannot rely upon the absence of active legal assistance in prison to excuse his failure to timely pursue federal habeas relief.  To recognize a viable basis for equitable tolling on the facts presented would be tantamount to a holding that prisons must provide active legal assistance in addition to the other legal resources provided, which the Constitution clearly does not require.  *See Lewis v. Casey, supra.*

Petitioner accordingly has failed to demonstrate that extraordinary circumstances stood in the way of and prevented a timely filing of the federal petition.

14.  Taking into account the foregoing, the Court further concludes that, in the final analysis, petitioner also did not demonstrate the requisite diligence additionally necessary to establish equitable tolling of the federal limitation period.  After his requests for active legal assistance were denied, the diligence requirement necessitated that he proceed forward without such assistance, not merely wait until some point in time when someone else agreed to actively assist him.

Petitioner accordingly has failed to demonstrate that equitable tolling renders the petition timely.

15.  Petitioner has failed to demonstrate a basis for delayed accrual of the federal limitation period under 28 U.S.C. § 2244(d)(1)(B), which provides that "[t]he limitation period shall run from ... the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action."

Section 2244(d)(1)(B) requires not merely a showing of a violation of the Constitution or laws of the United States but instead a showing of such a violation that creates an "impediment to the filing of an *application*."  Under established Ninth Circuit law, a petitioner seeking to demonstrate delayed accrual on this basis must demonstrate that the alleged impediment "altogether prevented him from presenting his claims in *any* form, to *any* court."  *Ramirez v. Yates*, 571 F.3d 993, 1000–1001 (9th Cir.2009)(emphasis in original).

Petitioner contends that the lack of active legal assistance from inmate law clerks and the lack of direct physical access to a prison law library constituted an unconstitutional impediment under § 2244(d)(1)(B).  He maintains that this impediment was not removed until he obtained his legal file with Ocasio's assistance on or about October 30, 2006.

With regard to access to the courts, there was neither unconstitutional state action nor an impediment under § 2244(d)(1)(B) in this regard.  As discussed at length in Conclusion No. 11, *supra*, petitioner has not demonstrated that he had a right to active legal assistance under the Constitution and/or that the paging system at either High Desert or Ely violated the Constitution.  Moreover, petitioner has not demonstrated that the limited legal resources available through the prison law libraries altogether prevented him from filing an application in *any* form to *any* court.  *Cf. Ramirez*, 571 F.3d at 1000-01 (petitioner failed to demonstrate that his placement in administrative segregation and consequent limitations on his access both to his legal file and to the prison law library "altogether prevented him from presenting his claims in *any* form, to *any* court.").

In the original opposition to the motion to dismiss, petitioner also relied upon his not having his legal file as an independent basis for delayed accrual under § 2244(d)(1)(B) separate and apart from his allegations regarding lack of legal assistance.  To the extent that petitioner continues to pursue this contention as an independent argument, his not having the legal file otherwise did not independently constitute an unconstitutional impediment that prevented him from timely filing a federal petition.  There was neither unconstitutional state action nor an impediment under § 2244(d)(1)(B) in this regard.  As discussed, *supra*, in Conclusion No. 12, the record in this matter establishes that while petitioner perhaps *wanted* his file as far back as 2004, he did not *request* his file until September 2006.  Once he did so, the state district court promptly granted his motion and followed through in an effort to see that petitioner was forwarded his file materials.   There is no continuing constitutional violation occurring while an inmate wants a legal file that he has not requested.  Nor did not having his legal file prevent petitioner from presenting a petition "in *any* form, to *any* court."  He indeed filed his first state petition without the file, and he could have filed a federal petition at any time. These conclusions follow with even greater force as to any remaining file materials that were sought and produced in or after early 2007, as petitioner by then had filed *two* state petitions without same.  And these conclusions of course follow with even greater force as to materials sought and obtained in 2008 and 2009 after the *federal* petition had been filed.

Petitioner therefore has not established a basis for delayed accrual under § 2244(d)(1)(B).

/ / / /

16.   Accordingly, taking into account the foregoing findings and conclusions, the Court holds that petitioner's federal petition is untimely.  The Court therefore has no occasion to reach the relation-back arguments presented as to specific claims.

If any Finding of Fact is considered to be a Conclusion of Law, or any Conclusion of Law is considered to be a Finding of Fact, it is the Court's intention that it be so considered.

ORDER

IT THEREFORE IS ORDERED that respondents' motion (#82) to dismiss is GRANTED and that the petition, as amended, shall be DISMISSED with prejudice as untimely.

IT FURTHER IS ORDERED that respondents' motion (#115) to substitute party is GRANTED and that Renee Baker shall be substituted for respondent E.K. McDaniel herein.

IT FURTHER IS ORDERED that a certificate of appealability is GRANTED.  While the Court is confident that the findings and conclusions made herein reach the correct result for the correct reasons, there nonetheless are sufficiently debatable issues potentially presented for an appeal.[44]

The Clerk of Court shall enter final judgment accordingly, against petitioner and in favor of respondents, dismissing this action with prejudice.

DATED this 30th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

_____

[44]The Court reviewed this matter together with *Felix v. McDaniel*, 2012 WL 666742, No. 3:09-cv-00483-LRH-WGC (D. Nev., Feb. 29, 2012), prior to issuing its order of dismissal and final judgment in that case.  Although these findings and conclusions are issued in final approximately a month later, the cases were reviewed and analyzed together.  The Court emphasizes this point because the fact that a COA is granted in this case while a COA was denied in *Felix* is not an oversight.  Different records were presented in the two cases in response to the respondents' motions to dismiss.  The Court remains of the view – as it was at the time of the joint review – that a COA properly is denied in *Felix* for the reasons stated in denying a COA in that case.

-30-